IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| CHERYL A. HAMBLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:08-CV-026 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. For the reasons set forth herein, defendant's motion for summary judgment [doc. 15] will be granted, and plaintiff's motion for summary judgment [doc. 11] will be denied. The final decision of the Commissioner will be affirmed.

I.

*Procedural History*

Plaintiff filed the present SSI application in October 2003, claiming to be disabled by "[s]troke and congestive heart failure, NERVES." [Tr. 80, 112] (emphasis in original). She alleges a disability onset date of October 30, 2003. [Tr. 80].

The claim was denied initially and on reconsideration. Then, in March 2006, an Administrative Law Judge issued a decision awarding benefits. Without conducting an administrative hearing, the Administrative Law Judge concluded that plaintiff is disabled by "hemiplegic migraines, congestive heart failure, hypertension, depressive disorder, somatoform disorder, and personality disorder." [Tr. 51-56].

That decision was reviewed *sua sponte* by the Commissioner's Appeals Council. *See* 20 C.F.R. § 416.1469. The Appeals Council "reviewed the evidence of record and found that the hearing decision [sic] does not provide sufficient evaluation of the evidence of record with adequate rationale in support of the findings and conclusion on the issue of the claimant's disability." [Tr. 39]. Plaintiff's claim was accordingly remanded for reevaluation. [Tr. 37-46].

Plaintiff then received an administrative hearing before a different Administrative Law Judge ("the ALJ"). In March 2007, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from the severe impairment of anxiety, but that the condition is not equal to any impairment listed by the Commissioner. [Tr. 23-24].[1]

---

[1] The court observes that the March 2006 administrative decision's "severe impairment" findings did not have a *res judicata* effect upon the present ALJ under *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). Because the March 2006 ruling was subsequently reversed by the Appeals Council, it was not a "final decision" with preclusive effect. *See, e.g., Wireman v. Comm'r of Soc. Sec.*, 60 Fed. App'x 570, 571 (6th Cir. 2003). Plaintiff makes no argument regarding *Drummond's* application to any final decision in any other prior application, and any such issue is therefore waived. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490 (6th Cir. 2006).

2

The ALJ thoroughly discussed the administrative record and concluded that the severity of plaintiff's subjective complaints is "simply not credible." He additionally found her not "to be a particularly reliable witness." [Tr. 23-29].[2] The ALJ concluded that plaintiff retains the residual functional capacity ("RFC") to perform light unskilled exertion, and that she remains able to return to her past relevant work as a cashier. [Tr. 26, 29]. Plaintiff was thus ruled ineligible for SSI benefits.

Plaintiff then sought Appeals Council review. On November 30, 2007, the Appeals Council issued a decision adopting all of the ALJ's findings *except for* the finding that plaintiff could return to her past relevant work. [Tr. 10-12].[3] The Appeals Council adopted the ALJ's ultimate conclusion that plaintiff is not disabled, but did so on the alternate basis of Rule 202.20 of the Commissioner's medical-vocational guidelines ("the grid"). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.20. The Appeals Council's ruling then became the Commissioner's final decision. *See Johnson v. Sec'y of Health & Human Servs.*,

---

[2] The ALJ further stated, "I recognize that this lady has some degree of anxiety and other symptoms but her apparent unwillingness to cooperate with the development of her claim by failing to attend examinations and malingering on ones that she has attended makes it very difficult to establish precise limitations. Considering the record as a whole, I conclude that she has failed to carry the burden of proof." [Tr. 30]. It is noteworthy that a prior SSI application was denied at the Administrative Law Judge level in 2002 and apparently not further appealed. [Tr. 102-08]. Plaintiff was then also considered a less than credible claimant, for reasons including her cancellation of a doctor's appointment because it was "too pretty outside." [Tr. 106, 166].

[3] The Appeals Council concluded that it was unclear whether plaintiff's prior cashier employment satisfied the definition of "past relevant work" since her "work history report . . . does not provide the actual months in which she worked." [Tr. 11]. *See* 20 C.F.R. § 416.960(b)(1) (Past relevant work, in material part, is work "that lasted long enough for you to learn to do it."). The court notes, however, that elsewhere in the administrative record plaintiff told a consulting source that her cashier employment lasted for a year and a half. [Tr. 234].

3

948 F.2d 989, 992 (6th Cir. 1991); 20 C.F.R. § 416.1481. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g).

II.

*Background and Testimony*

Plaintiff was born in 1972. [Tr. 80]. The record indicates that she was "an honor student" in attaining her high school diploma, and that she subsequently completed two years of college and an eighteen-month cosmetology program. [Tr. 135, 193, 233, 403].

Plaintiff claims to be in constant, worsening, anxiety-induced pain, including an anxiety-related "drawing up" of her right arm. [Tr. 92, 94, 130]. She has told the Commissioner that pain and anxiety render her unable to perform most household chores. [Tr. 91, 94, 133]. She "feel[s] lucky just to get up outta bed in the morning" and "just can't hold a job down because of my condition." [Tr. 95]. At the December 2006 administrative hearing, plaintiff continued to portray herself as physically and emotionally unable to work. [Tr. 400, 403, 405].

In January 2006, plaintiff told a consulting examiner that she had not worked since at least the beginning of 2004. [Tr. 233]. In September 2006, she told another consulting source that she had not worked since "years ago - I don't know dates." [Tr. 339]. Curiously, however, the records of her doctor indicate that she appeared at his clinic on September 3, 2004, "and we just had a very brief visit *because she is working at the local grocery store* and can only be gone about 5 minutes." [Tr. 285] (emphasis added). Similarly,

4

plaintiff appeared at the clinic on October 31, 2005, with ear and carpal tunnel complaints. The records show that "[s]he apparently came to our clinic early this morning, was triaged by a nurse and thought it was appropriate to have her seen immediately by a doctor, however she refused that *and went to work* and now subsequently comes in at the end of the day." [Tr. 277] (emphasis added). Further, on November 1, 2005, plaintiff told Dr. Wendell Lawson that she "works as a cashier and also works at a deli." [Tr. 299] (emphasis added).

### III.

### *Relevant Medical Evidence*[4]

Plaintiff has been treated by Dr. Steven Roskos and physician's assistant Deborah Terry, among others, at Clearfork Clinic. Their file notes a history of anxiety, depression, and obsessive-compulsive complaints. [Tr. 162, 167, 173]. Notes from this provider in the year 2000 question possible "embellishment" of physical symptoms. [Tr. 188]. On June 12, 2006, Ms. Terry wrote that "with her diagnosis of cardiomyopathy, anxiety disorder among her other medical problems, it is reasonable to assume she is disabled." [Tr. 372].

Dr. Jeffrey Summers performed a physical consultative examination in March 2004. Plaintiff appeared alert. [Tr. 190]. Cognitive functioning and responsiveness were generally appropriate. [Tr. 190]. Plaintiff demonstrated "inconsistent" right arm strength.

---

[4] On appeal, plaintiff does not challenge the Commissioner's conclusions pertaining to her physical complaints. The court's discussion will therefore focus on plaintiff's mental health allegations.

5

Dr. Summers explained, "For example, she holds her right upper extremity against her body at times but then will use her arm to assist her in climbing onto and off of the exam table. She is also noted to be able to open doors and button her jacket with her right upper extremity." [Tr. 190]. Dr. Summers's "most likely diagnosis [was] one of an unknown underlying psychological disorder with conversion reaction." [Tr. 191].[5] He opined that plaintiff remains able to perform "telemarketing, data entry, clerical type work, etc." [Tr. 191].

The Commissioner has afforded plaintiff three separate mental status examinations. The first was conducted in March 2004 by senior psychological examiner Alice Garland, M.S. Ms. Garland "was concerned that this claimant may have been trying to exaggerate symptoms on the date of this evaluation." [Tr. 192, 194-96]. Ms. Garland concluded that plaintiff's true current level of functioning was "difficult to ascertain, as at times I thought the claimant may have been trying to exaggerate symptoms and underestimate what she did on a daily basis . . . ." [Tr. 196].

The second consultative mental examination was performed in January 2006 by senior psychological examiner Pamela Branton, M.S. That day, plaintiff appeared depressed and "quite anxious." [Tr. 234]. She told Ms. Branton that her right arm was "totally numb," yet she used that same arm to complete block design testing. [Tr. 235]. In

---

[5] A conversion reaction is an involuntary mental disorder characterized by physical symptoms having no demonstrable corresponding physiological basis. *Dorland's Illustrated Medical Dictionary* 529 (29th ed. 2000).

material part, Ms. Branton wrote,

> The claimant presents with a somewhat confusing diagnostic picture. While she obtained a Full Scale IQ of 74, which is likely a low estimate of her true ability, it was felt that depression and anxiety may have lowered her scores. The examiner suspects potential in at least the low average range. . . . There may be some secondary gain in her taking on the sick role. She appears to see herself as very much an invalid and likely acts on that belief. . . . The examiner does strongly suspect a significant level of exaggeration and somatizing.

[Tr. 238]. Nonetheless, based on "testing, history, and observation," Ms. Branton predicted marked limitation in three vocational capacities. [Tr. 240-41].

Plaintiff returned to Ms. Garland on September 18, 2006, for the third mental status examination. Plaintiff "walked very slowly and seemed to be in a daze. . . . Speech was either mute or responsive to questions only with latency and poverty of content. She had a vacant look on her face and she held her hands to her mouth. She spoke in a very low childlike manner." [Tr. 339]. Ms. Garland was again "concerned that this claimant was exaggerating symptoms on the day of this evaluation. She also held her right arm to her body but I noted that she did use her right arm when doing the MMPI-2" test. [Tr. 339]. IQ scoring placed plaintiff at the low end of the mildly mentally retarded range. [Tr. 341]. Ms. Garland wrote that plaintiff "was not cooperative with the evaluation and test results are thought to be invalid. . . . [O]n the date of this evaluation, the examiner would find it difficult to determine specific diagnoses and limitations as the claimant appeared to be putting forth poor effort in today's evaluation and to be exaggerating symptoms." [Tr. 338, 342]. After some prompting, plaintiff began the MMPI-2 test but did not complete it, telling Ms. Garland

7

that she had "problems with her arm." [Tr. 342]. Plaintiff subsequently told the Commissioner that she did not complete the test because it was "very belittling" [Tr. 348], because she was fatigued [Tr. 398], and/or because "I had done it before" [Tr. 398].

IV.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. *See* 42 U.S.C. § 1382(a). "Disability" is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.*

V.

*Analysis*

As discussed, the ALJ and the Appeals Council found that plaintiff suffers from only one severe impairment - anxiety. Plaintiff offers two theories in support of reversal or remand. First, she contends that her "mental impairments are more numerous and more limiting than found by the ALJ and the Appeals Council." Her briefing on this issue, however, merely resummarizes portions of the administrative record without making any effort to specify how the Commissioner purportedly erred. The issue is accordingly waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation omitted); *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490 (6th Cir. 2006) ("This challenge warrants little discussion, as [plaintiff] has made little effort to develop this argument in her brief on appeal . . . .").

Even if plaintiff had not waived this issue, the court finds the Commissioner's RFC conclusions to be supported by substantial evidence. Although physician's assistant Terry wrote that "it is reasonable to assume she is disabled," that is merely a conclusory statement on an issue ultimately reserved to the Commissioner, not the treating source. *See* 20 C.F.R. § 416.927(e)(1). Conversely, examining Dr. Summers concluded that plaintiff remains able to perform a number of jobs existing in the economy.

Given the evidence of embellishment and the inconsistencies rampant in the instant record, the Commissioner was confronted with a difficult task in evaluating plaintiff's RFC. The Commissioner adequately explained his synthesis of the inconsistent evidence presented by plaintiff, and the substantial evidence standard of review permits that "zone of choice." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). Although examiner Branton predicted some "marked" limitations of functioning, the ALJ explained his "total rejection" of that opinion as unsupported by the record as a whole. [Tr. 26]. The ALJ found it "noteworthy that psychological examiner Ms. Garland could not provide diagnoses for the claimant in light of the fact that she did not put forth her best efforts and appeared to be exaggerating her symptoms." [Tr. 26]. It is also "noteworthy" that examiner Branton herself also "strongly suspect[ed] a significant level of exaggeration" [Tr. 238], and it is even more noteworthy that Ms. Branton formed her opinions in part based on plaintiff's misstatement that she had not worked in more than two years "due to stress." [Tr. 233]. As discussed above, the records of *two* medical sources reveal that plaintiff was working (at two jobs) within three months prior to her appointment with Ms. Branton. [Tr. 277, 299]. In light of the flagrant malingering evident in the administrative record, the ALJ did not err in "totally rejecting" Ms. Branton's assessment.

The remaining evidence supports the conclusion that plaintiff's complaints are overstated, and that evidence merits minimal additional discussion. For example, IQ testing at Ms. Garland's second evaluation, if valid, would place plaintiff in the mildly mentally

11

retarded range [Tr. 341], yet plaintiff has elsewhere described herself as a former honors student who completed two years of college and an eighteen-month cosmetology program. It is extraordinarily unlikely that a "mildly mentally retarded" individual could have achieved those accomplishments, and Ms. Garland was correct in deeming the IQ score an "invalid" result of poor effort and symptom magnification. [Tr. 341-42]. Based on the record before this court, it "simply fails the straight face test" for plaintiff to now complain that the Commissioner erred in not crediting her every subjective complaint. *Coffey v. Dowley Mfg., Inc.*, 187 F. Supp. 2d 958, 977 (M.D. Tenn. 2002). In fact, the Commissioner appears to have offered plaintiff the benefit of the doubt in concluding that she suffers from any severe impairment at all.[6]

Nonetheless, the Commissioner credited plaintiff's complaints of anxiety and accommodated that condition by restricting her RFC to no more than light unskilled work "requiring no more than simple instructions." [Tr. 26]. In her second allegation of error, plaintiff contends,

> As previously noted, the evidence of record indicates Plaintiff's mental limitations are more numerous than found by the ALJ and the Appeals Council. As such, the Appeals Council erred in relying exclusively on the Medical-Vocational Guidelines [hereinafter "Grid rules"] in finding Plaintiff is not disabled.

---

[6] On a similar note, the court recognizes that the ALJ accommodated plaintiff's *possible* conversion disorder, stating that "it appears that the limitation to light work may be gratuitous and, at best, is supported by the assumption that she has an emotional disorder that manifests itself in that she believes she cannot perform strenuous work." [Tr. 28].

12

[Doc. 12, p. 20]. To the extent that plaintiff again relies on unspecified and unbriefed "numerous" mental limitations, this issue too is waived. *See Hollon*, 447 F.3d at 490.

Further, six weeks prior to its decision, the Appeals Council sent to plaintiff and her attorney a "Notice of Appeals Council Action." [Tr. 13A-13D]. In material part, the notice advised,

> We plan to issue a decision adopting the entire Administrative Law Judge's decision which found that you were not "disabled". However, we propose to change the basis for the finding that you were not "disabled", from a finding that you are able to perform your past relevant work as a cashier (Finding #5), to a finding that Rule 202.20 directs a finding that you are not "disabled".
>
> . . .
>
> You may send us more evidence or a statement about the facts and the law in your case within 30 days of the date of this letter.

[Tr. 13A-13B]. The court notes that plaintiff offered no objection or comment to the Appeals Council's clearly intended application of grid rule 202.20. [Tr. 10]. For this additional reason, the issue is now likely waived.

Assuming *arguendo* that plaintiff has not waived her grid argument, the court concludes that application of the grid was appropriate in this case. Where a claimant is found to be *physically* capable of performing the full range of work at a particular level, the Commissioner may meet his step five burden by referencing the grid unless the claimant has nonexertional impairments of sufficient significance. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008); *Cole v. Sec'y of Health & Human Servs.*, 820 F.2d 768, 771-72 (6th Cir. 1987). In other words,

13

> It should be emphasized that the grid is only used when the components of the grid *precisely match the characteristics of the claimant*. Thus, the only role the guidelines play is to take administrative notice of the availability of jobs, or lack thereof, for claimants whose abilities are *accurately described by the grid*.

*Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 531 (6th Cir. 1981) (emphasis added).

As discussed above, the Commissioner did not err in concluding that plaintiff suffers only from the "severe" impairment of anxiety, nor did the Commissioner err in accommodating plaintiff's complaints by restricting her RFC to light unskilled work requiring no more than simple instructions. Application of grid rule 202.20 was thus proper, as that rule accurately describes plaintiff's abilities. *See Kirk*, 667 F.2d at 531. Grid rule 202.20 applies to claimants of plaintiff's age and educational background who are restricted to light and unskilled work. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.20.

The Commissioner's additional restriction to work "requiring no more than simple instructions" does not preclude use of the grid. "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). Under that definition, the language used in this case "requiring no more than simple instructions" was mere surplusage.

Lastly, use of the grid is not impacted by language found in the ALJ's decision crediting "moderate limitation in concentration, persistence, or pace." [Tr. 25]. To preclude use of the grid, a nonexertional limitation must *significantly* or *severely* restrict the ability to

14

work. *See Cole*, 820 F.2d at 772. A minor restriction is insufficient. *See, e.g., Kimbrough v. Sec'y of Health & Human Servs.*, 801 F.2d 794, 796 (6th Cir. 1986). The Commissioner did not err - particularly in light of the striking facts of the instant case - in concluding that plaintiff's "moderate" limitation was not sufficiently significant or severe to preclude application of the grid.

For the reasons provided herein, the decision of the Commissioner was supported by substantial evidence and will be affirmed. An order consistent with this opinion will be entered.

ENTER:

        s/ Leon Jordan
United States District Judge